UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| RODNEY WILLIAMS | CIVIL ACTION NO. 07-0137 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| SYNERGY CARE, INC. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 18) filed by third party defendant, Executive Risk Indemnity, Inc. ("Executive Risk"). Executive Risk argues that summary judgment is appropriate because written notice approximately 18-20 months after receipt of a claim does not satisfy a condition precedent of coverage, i.e., providing written notice of claim as soon as practicable. Defendant and third party plaintiff, Synergy Care, Inc. ("Synergy Care"), opposed the motion. For the reasons which follow, the Motion for Summary Judgment is **GRANTED**.

**I.    BACKGROUND.**

On January 18, 2007, Plaintiff Rodney Williams ("Williams") filed a Complaint before this Court alleging that he was discharged because of his race, in violation of Title VII of the Civil Rights Act of 1964. See Record Document 1. Synergy answered the Complaint and also filed a Third-Party Complaint against Executive Risk, arguing that Executive Risk improperly denied coverage under its Diversified Health Care Organization Directors and Officers Liability Insurance Policy Including Employment Practices Liability Coverage. See Record Document 6. Executive Risk answered and alleged that Synergy Care did not satisfy a condition of coverage, i.e., "reporting as soon as practical those claims made within the Policy period." Record Document 12 at 5.

The underlying facts relating to the third party claim in this case are undisputed.[1] Executive Risk issued a "Directors and Officers Liability Insurance Policy Including Employment Practices Liability Coverage" ("the Policy") to Synergy Care covering the policy period of July 1, 2004 through July 1, 2005. See Record Document 18-4 at 10-42. Following the expiration of the 2004-2005 policy period, Synergy renewed the Policy for the period covering July 1, 2005 to July 1, 2006. See id. at 43-74.

The Policy is a Claims Made Policy that applies only to claims first made during the policy period. The declarations page of the Policy states:

> NOTICE: THIS IS A CLAIMS MADE POLICY WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD," OR, IF PURCHASED, THE EXTENDED REPORTING PERIOD.

Id. at 10, 43. Section I of the Policy further provides:

> (A)  The Underwriter will pay on behalf of the Insured Persons Loss from Claims first made against them during the Policy Period for Wrongful Acts, including Employment Practices Wrongful Acts . . .
>
> (B)  The Underwriter will pay on behalf of the Company:
>
>   (1)  Loss from Claims first made against the Insured Persons during the Policy Period for Wrongful Acts, including Employment Practices Wrongful Acts . . .

Id. at 12, 45. Section II(B) of the Policy defines "Claim":

> [W]ritten notice received by an Insured that any person or entity intends to hold any Insured responsible for a Wrongful Act. A Claim will be deemed to have been made when such written notice is first received by any Insured.

---

[1] Executive Risk filed a detailed Statement of Material Facts. See Record Document 18-3. Synergy Care did not specifically deny or dispute these facts, but instead filed a two paragraph Statement of Material Facts that outlined when notice was given to Executive Risk and when the EEOC issued the Dismissal and Notice of Rights letter. See Record Document 20-2. Accordingly, the Court has adopted much of Executive Risk's Statement of Material Facts in the Background section of the instant Memorandum Ruling.

Id. at 13, 46. Section II(F) defines "Employment Practices Wrongful Act" as "any actual or alleged: (1) Wrongful Termination; (2) Discrimination; (3) Harassment; (4) Retaliation; or (5) Workplace Tort." Id. Section II(Q)(1) defines "Wrongful Act" as "Any Employment Practices Wrongful Act by an Insured Person in his or her capacity as a . . . employee of the Company." Id. at 15,48.[2] Section IV(G) of the Policy governs notice and specifically provides:

> (1) As a condition precedent to any right to payment in respect of any Claim . . . the Insureds must give the Underwriter written notice of such Claim, with full details, as soon as practicable after it is first made.

Id. at 20, 53.

On July 22, 2005, Williams filed a Charge of Discrimination ("the charge") with the EEOC wherein he alleged that he was unlawfully terminated by Synergy Care on June 27, 2005 due to his race. See Record Document 18-5 at 3. Synergy Care received the charge prior to September 1, 2005. See id. It did not provide notice to Executive Risk of the charge at any time during the July 1, 2005 to July 1, 2006 policy period. See id. at 3-5. Rather, upon receipt of the charge, Synergy Care turned the matter over to its attorney, who opposed and responded to the charge. See id. at 7.

The record reflects that Synergy Care received Tanya M. Lucie's August 8, 2006 letter stating that the Policy had expired on August 1, 2006. See id. at 4. Williams filed the instant lawsuit on January 18, 2007. See Record Document 1. Synergy Care admitted that the Complaint and the charge filed by Williams both allege race discrimination and

---

[2]In the complaint, Williams alleged that he was terminated by Kristi Thomas, Synergy Care's regional representative, on account of his race. See Record Document 1, ¶¶ 9-10.

refer to the same alleged misconduct. See Record Document 18-5 at 5. Synergy Care further admitted that it first notified Executive Risk of Williams' race discrimination allegations on March 1, 2007, the same day on which Synergy Care was served with the complaint. See id. at 7; Record Document 20-2. Executive Risk denied coverage by letter dated April 23, 2007 from J. B. Gaffney, Claims Analyst, to Todd Broussard with Synergy Care. See Record Document 18-5 at 6.

## II.     LAW AND ANALYSIS.

### 1.     Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See

Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

### 2. Insurance Contracts.

An insurance policy is a contract and establishes the law between the parties. See Pareti v. Sentry Indem. Co., 536 So.2d 417, 420 (La. 1988) (citation omitted). If the policy language is clear and expresses the intent of the parties, then the policy shall be enforced as written. See id. (citation omitted). If there is ambiguity in the policy, then it should be interpreted in favor of the insured and against the insurer. See id. (citation omitted). Courts lack the authority to vary the terms of a policy under the guise of contractual interpretation when the policy provisions are framed in clear and unambiguous language. See id. (citations omitted).

A claims made liability policy provides coverage for liability only if a claim is first made during the policy period. See 15 Williams Shelby McKenzie & H. Alston Johnson, Louisiana Civil Law Treatise, § 202 (3d ed. 2006). This coverage differs from an occurrence basis policy, which requires only that the injury or damage occur within the policy period and does not require that the claim be made within the policy period. See id. Under Louisiana law, notice provisions of a claims made policy are strictly construed. See F.D.I.C. v. Barham, 995 F.2d 600, 605 (5th Cir. 1993). Further, in a claims made policy, the definition of "claim," as set forth in the liability policy, is enforced. See id., citing McFarland v. Sauvinet, 525 So.2d 686 (La.App. 1 Cir. 1988); Specialty Food Systems, Inc. v. Reliance Ins. Co. of Illinois, 45 F.Supp.2d 541 (E.D. La. 1999); Reichert v. Bertucci, 650 So.2d 821 (La.App. 4 Cir. 1995).

The provisions of the Policy in this case are clear and unambiguous. The notice provision in the Policy states:

> (1) As a **condition precedent** to any right to payment in respect of any Claim . . . the Insureds must give the Underwriter written notice of such Claim, with full details, as soon as practicable after it is first made.

Record Document at 18-4 at 20, 53 (emphasis added). The Policy defines "claim" as "written notice received by an Insured that any person or entity intends to hold any Insured responsible for a Wrongful Act." Id. at 13, 46.

Again, the legal question presented in this case is whether Synergy Care's written notice on March 1, 2007, approximately 18-20 months after it received Williams' EEOC charge, satisfies a condition precedent of coverage, i.e., providing written notice of a claim as soon as practicable. Williams filed his EEOC charge on July 22, 2005. Synergy Care admitted that it received the EEOC charge no later than September 1, 2005. Executive Risk argued that the EEOC charge constitutes a claim. Conversely, Synergy Care maintained that even though it received the EEOC charge in the fall of 2005, it was not subject to potential liability until Williams filed his complaint in 2007. The Court is unpersuaded by Synergy Care's argument. The Policy's definition of "claim" is not as narrow as Synergy Care contends and easily includes an EEOC charge, as Williams' charge was written notice received by Synergy Care that he intended to hold it responsible for a wrongful act, i.e., his termination allegedly based on race.

Likewise, the notice provision, namely the "as soon as practicable" clause, of the Policy is not ambiguous. "The clause acts as an underlying requirement that any notice of claim be timely; it does not act as an indefinite extension of the notice of claims provisions." F.D.I.C. v. Barham, 794 F.Supp. 187, 194 (W.D.La. 1991). Even if this Court assumed ambiguity, reads the "as soon as practicable" clause in the light most favorable

to Synergy Care, and construes any ambiguity against Executive Risk, the clause cannot be interpreted to extend the coverage of a claims made policy in a case where Synergy Care did not provide notice until 18-20 months after receiving written notice that Williams intended to hold it responsible for racial discrimination.

Synergy Care further argued that Executive Risk must show actual prejudice in order to avoid coverage on a claims made policy where the insured purportedly gave late notice. Yet, the Fifth Circuit has held "that Louisiana law enforces provisions of insurance contracts which require notice as a condition precedent without also requiring the insurer to make a particular showing of prejudice." MGIC Indem. Corp. v. Central Bank of Monroe, La., 838 F.2d 1382, 1386 (5th Cir. 1988); F.D.I.C. v. Barham, 794 F.Supp. at 193-194 ("[W]e find that no showing of 'actual prejudice' is necessary here. Although under 'occurrence' policies courts have required the insurer to show actual prejudice to avoid coverage for late notice, Louisiana courts have not established that actual prejudice is required to avoid coverage on a 'claims made' policy."). The notice provision of the Policy in this case specifically states that "as a **condition precedent** to any right to payment in respect of any Claim . . . the Insureds must give the Underwriter written notice of such Claim, with full details, as soon as practicable after it is first made." Record Document 18-4 at 20, 53 (emphasis added). Thus, Executive Risk is not required under Louisiana law to make a particular showing of actual prejudice.

The Policy's definition of a claim and its notice provision are clear and unambiguous. Synergy Care's failure to provide notice of Williams' allegations of race discrimination, which were received between July 22, 2005 and September 1, 2005, until March 1, 2007 forecloses a finding that notice was provided "as soon as practicable." Executive Risk

properly denied coverage in this matter and summary judgment dismissing the third party claim is appropriate.

## III.  CONCLUSION.

Based on the foregoing analysis, the Court finds that summary judgment in favor of Executive Risk is appropriate. Executive Risk properly denied coverage in this matter, as Synergy Care failed to comply with the notice provisions set forth in Section IV(G) of the Policy. Accordingly, the Motion for Summary Judgment filed by Executive Risk is **GRANTED** and Synergy Care's third party claim is **DISMISSED WITH PREJUDICE**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 29th day of July, 2008.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE